**Nos. 16-3847 & 16-3859**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

**Keith Anthony**
Plaintiff/Appellee

v.

**Richard Seltzer,** *et al.*
Defendants/Appellants

---

On Appeal from the United States District Court for the
Eastern District of Pennsylvania at Civil Action No. 5:14-cv-05554-JFL
The Honorable Joseph F. Leeson, Jr.
Judgment/Order Dated September 30, 2016, Denying Defendants/Appellants'
Motion to Dismiss Pursuant to Rule 12(b)(6)

---

## APPELLEE'S REPLY BRIEF

---

Robert E. Goldman, Esquire
Pennsylvania Attorney Identification No. 25340
**Law Office of Robert E. Goldman, LLC**
535 Hamilton Street, Suite 302
Allentown, PA 18101-1614
Phone:  (610) 841-3876
Fax:     (215) 933-9602
Email:  reg@bobgoldmanlaw.com

*Attorney for Plaintiff/Appellee*

## Table of Contents

**Page**

**Table of Citations** ................................................................. ii

**Statement of Jurisdiction** ...................................................... 1

**Counter Statement of Issues Presented** ................................... 2

**Statement of Standard or Scope of Review** ............................. 3

**Counter Statement of the Case** .............................................. 4

**Statement of Related Cases and Proceedings** ........................... 9

**Summary of Argument** ......................................................... 10

**Argument** .......................................................................... 12

**Conclusion** ........................................................................ 31

# Table of Citations

**Cases**                                                                         **Page**

*Abbott v. Sangamon County, Ill.*,
705 F.3d 706 (7th Cir. 2013) ........................................................    25

*Acierno v. Cloutier*,
40 F.3d 597, 605 (3d Cir. 1994) ...................................................    1

*Aldaba v. Pickens*,
844 F.3d 870 (10th Cir. 2016) ......................................................    20, 21

*Anderson v. Creighton*,
483 U.S. 635, 640 (1987) .............................................................    17

*Ashcroft v.* Iqbal,
556 U.S. 662, 672-675 (2009) ......................................................    1

*Assaf v. Fields*,
178 F.3d 170, 176 (3d Cir. 1999) .................................................    18

*Austin v. Redford Twp. Police Dept.*,
690 F.3d 490, 498-99 (6th Cir. 2012) ..........................................    24

*Beers-Capitol v. Whetzel*,
256 F.3d 120, 142 n.15 (3d Cir. 2001) .........................................    16

*Borton v. City of Dothan*,
734 F.Supp.2d 1237, 1252 (M.D. Ala. 2010) ...............................    26

*Brown v. Burghart*,
2012 WL 48784 (E.D. Pa. 2012) ................................................    23

*Brown v. City of Golden Valley*,
74 F.3d 491, 499 (8th Cir. 2009) .................................................    24

*Burns v. County of Cambria, Pa.*,
971 F.2d 1015, 1024 (3d Cir. 1992) .............................................    18

*Casey v. City of Federal Heights*,
509 F.3d 1278, 1286 (10th Cir. 2007) ------------------------------------------------- 23-24

*Curley v. Klem*,
298 F.3d 271, 278 (3d Cir. 2002) -------------------------------------------------------- 19

*Cyrus v. Town of Mukwonago*,
624 F.3d 856, 863 (7th Cir. 2010) ------------------------------------------------------ 22, 24-25

*Deorle v. Rutherford*,
272 F.3d 1272, 1285 (9th Cir. 2001) ------------------------------------------------- 22

*Doe v. Delie*,
257 F.3d 309 fn. 10 (3d Cir. 2001) ---------------------------------------------------- 18

*Edwards v. City of Goldsboro*,
178 F.3d 231, 251 (4th Cir. 1999) ------------------------------------------------------ 19

*Geist v. Ammary*,
2012 WL 6762010, at *8 (E.D. Pa. 2012) ------------------------------------------- 19-20, 22

*George v. Rehiel*,
738 F.3d 562, 569 (3d Cir. 2013) ------------------------------------------------------ 1, 3

*Good v. Dauphin County Soc. Servs. For Children & Youth*,
891 F.2d 1087, 1092 (3d Cir. 1989) --------------------------------------------------- 17, 18

*Gorman v. Warwick Twp.*,
2011 WL 1235198, at *9 (E.D. Pa. 2011) ------------------------------------------- 22-23, 25

*Graham v. Connor*,
490 U.S. 386, 395 (1989) ------------------------------------------------------------------- 22, 23-24

*Gruenke v. Seip*,
225 F.3d 290, 298 (3d Cir. 2000) ------------------------------------------------------ 10, 16

*Harlow v. Fitzgerald*,
457 U.S. 800, 818 (1982) ------------------------------------------------------------------- 16, 19

iii

*Hope v. Pelzer*,
536 U.S. 730, 741 (2002) .................................................................... 19

*Johnson v. Jones*,
515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) ............... 28-29

*Karnes v. Skrutski*,
62 F.3d 485, 491 (3d Cir. 1995) ........................................................... 29

*Kopec v. Tate*,
361 F.3d 772, 776-78 (3d Cir. 2004) .................................................... 22

*Landis v. Baker*,
297 Fed. Appx. 453 (6th Cir. 2008) ..................................................... 25

*Mayer v. Belichick*,
605 F.3d 223, 229-30 (3d Cir. 2010) .................................................... 10

*Meirthew v. Amore*,
417 Fed. Appx. 484, 499 (6th Cir. 2011) ............................................. 23

*Meyers v. Baltimore County, Md.*,
713 F.3d 723, 734 (4th Cir. February 1, 2013) .................................... 25-26

*McGreevey v. Stroup*,
413 F.3d 359, 364 (3d Cir. 2005) ......................................................... 10, 15-16

*Monterio v. City of Elizabeth*,
436 F.3d 397, 403 (2006) ...................................................................... 29

*Newland v. Reehorst*,
328 Fed. Appx. 788, 790 n.3 (3d Cir. 2009) ........................................ 10-11, 19

*Oliver v. Fiorino*,
586 F.3d 898, 907 (11th Cir. 2009) ...................................................... 24, 26-27

*People of Three Mile Island v. Nuclear Regulatory Comm'rs*,
747 F.2d 139, 144-45 (3d Cir. 1984) .................................................... 18

iv

*Pro v. Donatucci,*
81 F.3d 1283 (3d Cir. 1996) ............................................................ 18

*Santos v. Gates,*
287 F.3d 846, 856 (9th Cir. 2002) ................................................ 24

*Saucier v. Katz,*
533 U.S. 194 (2001) ...................................................................... 10, 16

*Scott v. United States,*
436 U.S. 128, 137-139 (1978) ................................................... 23, 28, 29

*Shultz v. Carlisle Police Dept.,*
706 F.Supp.2d 213, 624 (M.D. Pa. 2010) ................................... 25

*Stoneking v. Bradford Area Sch. Dist.,*
882 F.2d 720, 726 (3d Cir. 1989) ................................................ 16

*Torisky v. Schweiker,*
446 F.3d 438, 442 (3d Cir. 2006) ............................................... 3, 15

*United States v. Lanier,*
520 U.S. 259, 271 fn. 10 (1997) ................................................. 17-18

*Wilson v. Layne,*
526 U.S. 603, 614 (1999) .............................................................. 18

*Wilson v. Layne,*
526 U.S. 603, 615 (1999) .............................................................. 16

*Woods v. Grant,*
665 F.2d 438 (D. Del. 2009) ........................................................ 25

## <u>Statutes and Rules</u>

28 U.S.C. § 1291 ............................................................................ 1

42 U.S.C. § 1983 ............................................................................ 4, 24

F.R.C.P. 8(a)(2) .............................................................................. 10

## STATEMENT OF JURISDICTION

Ordinarily this Court does not have jurisdiction to review district court orders denying motions to dismiss because there is no final order within the meaning of 28 U.S.C. § 1291." *Acierno v. Cloutier*, 40 F.3d 597, 605 (3d Cir. 1994).  However, in *Ashcroft v. Iqbal,* 556 U.S. 662, 672–675 (2009), the Supreme Court held that a district court order denying a motion to dismiss based on qualified immunity is appealable under the collateral order doctrine. *George v. Rehiel*, 738 F.3d 562, 569 (3d Cir. 2013).

## <u>COUNTER STATEMENT OF ISSUES PRESENTED</u>

1. Did the district court err in denying Defendants' qualified immunity defense where the court determined from a review of Plaintiff's Amended Complaint that no police officer or Emergency Medical Services ("EMS") member could reasonably believe that it was lawful to tase more than a dozen times a handcuffed and restrained medical patient, not suspected of criminal activity, including while he was restrained on an ambulance litter?

2. Did the district court err in identifying Plaintiff's constitutional right to bodily integrity and the prohibition against the excessive use of force under the Fourth Amendment as the constitutional rights at issue when denying Defendants' qualified immunity claim?

## STATEMENT OF STANDARD OR SCOPE OF REVIEW

This Court exercises de novo review of a district court's denial of a motion to dismiss on qualified immunity grounds. *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013). In reviewing a denial of qualified immunity at the Rule 12(b)(6) stage of litigation, the Court must accept all plaintiff's allegations as true and draw all inferences in his or her favor. *Torisky v. Schweiker*, 446 F.3d 438, 442 (3d Cir. 2006).

## COUNTER STATEMENT OF THE CASE

A. Procedural History

On September 26, 2014, Appellee/Plaintiff commenced this 42 U.S.C. § 1983 case with the filing of a Complaint against the City of Allentown and two police officers, Richard Seltzer and Ryan Alles. On November 25, 2014, Appellant/Defendants filed a motion to dismiss the complaint. By Order dated September 21, 2015, the district court directed Plaintiff to file an Amended Complaint.

Plaintiff filed an Amended Complaint on October 2, 2015, and added as Defendants, EMS personnel Mehmet Barzev and Matthew Brett. In filings on November 13, 2015 by Alles, November 17, 2015 by Seltzer and the City of Allentown, and November 30, 2015 by Barzev and Brett, all Defendants filed motions to dismiss the Amended Complaint, in part, based upon a claim of qualified immunity. On September 30, 2016, the district court denied Defendants Seltzer, Alles, Barzev and Brett's motion to dismiss on qualified immunity grounds and this appeal followed, challenging the district court's denial of the motion to dismiss based on qualified immunity.

4

On February 22, 2017, Defendants Seltzer, City of Allentown, Barzev and Brett filed their brief in support of their appeal. On February 27, 2017, Defendant Alles filed his brief.[1]

## B. Counter Statement of the Facts

Defendants Seltzer, et al's Statement of the Case improperly alleges, beginning in the very first paragraph and continuing throughout their brief, facts not of record in this case.[2] Defendant Alles makes similar inappropriate statements of supposed but non-established facts.[3] Accordingly, these facts must be disregarded in this appeal.

Plaintiff has alleged in his Amended Complaint that, on November 1, 2013, Plaintiff experienced vehicle problems while driving his automobile. App. 27 ¶ 11.

---

[1] Appellee is filing one brief in response to all Appellants'/Defendants' appeals Where a distinction is warranted, Defendants Seltzer, City of Allentown, Barzev and Brett will collectively be referred to as "Defendants Seltzer, et al" and Defendant Alles as "Defendant Alles. Where all Defendants are referred to collectively, they will be titled, "Defendants."

[2] There has been no formal discovery in this case pending disposition of the motion to dismiss. Allegations of Plaintiff "biting a firefighter and grabbing another firefighter by the testicles;'' engaging in "violent behavior;" the claim that the Officers and Paramedics "save[d] his life;" and, that the incident took place in the parking lot of a beer distributor are most inappropriate, not of record, and are, apparently, only what Defendants may later allege in their Answer to the Amended Complaint. Plaintiff will deny these allegations and counter that the repeated tasering of Plaintiff caused him to go into renal failure, nearly costing him his life.

[3] Defendant Alles, for example, states that the taser was employed because Plaintiff was in mental distress or suffering from a "mental disorder," a supposed fact not part of the record or Amended Complaint.

After pulling over, Plaintiff observed radiator fluid leaking from the vehicle and he crawled under it to examine the cause. *Id.* ¶ 12-14. After a short interlude, and while he was inspecting under the vehicle, Plaintiff experienced a seizure. *Id.* ¶ 15. A bystander called 911 to request assistance and expressly advised that Plaintiff was suffering a seizure. App. 28 ¶ 17-18. There was no suggestion provided to 911 that Plaintiff was involved in any criminal misconduct. *Id.* ¶ 18. EMS and Police Officers arrived. *Id.* ¶ 19-20. EMS was unable to administer medical attention upon arrival due to Plaintiff's seizure conditions, including involuntary convulsions. *Id.* ¶ 21. Defendant Seltzer then used a "drive stun" taser on Plaintiff and handcuffed him. *Id.* ¶ 22. The "drive stun" application is a "pain compliance" technique and known to cause extreme pain upon administration. *Id.* ¶ 23. After the drive stun, Plaintiff was handcuffed and "under the absolute control" of Defendant Officers Seltzer and Alles. *Id.* ¶ 24-5. Nonetheless, Defendants Seltzer and Alles continued to tase the handcuffed Plaintiff at least another dozen times before Plaintiff arrived at the hospital. *Id.* ¶ 26. Even after being strapped to an ambulance litter and loaded into the ambulance, the Defendant Officers continued to tase plaintiff. App. 29 ¶ 30. The EMS Defendants, Defendant Seltzer claims, asked that the officers to tase the Plaintiff after he was handcuffed and restrained. App. 28 ¶ 27. Contrary to Defendants' factual assertions in their brief, there are no facts of record that establish that the tasering and handcuffing of Plaintiff facilitated the administration of any

medical treatment, or that after the first tasing the Plaintiff was resistant to the officers, nor does the Amended Complaint state that Plaintiff's voluntary movements, especially after he was restrained, prevented medical care.  At this stage of the proceedings, the only evidence is that Plaintiff was suffering from a seizure resulting in involuntary convulsions. App. 27-8 ¶¶ 16, 21.

In addition, it is alleged throughout the Amended Complaint that the repeated tasing of the Plaintiff seriously injured Plaintiff and hindered, rather than promoted, his medical care.  Taser International provided warnings with its tasers that usage of a taser risks injury or death of a person tased, and in the instance of a patient suffering with a seizure, tasing can induce additional seizures, or worsen existing seizures. App. 29 ¶ 29; See also Exhibit "A" to Amended Complaint (App. 37-8). The taser device can cause strong muscle contractions, usually rendering a subject temporarily unable to control his movements and may result in secondary injuries. App. 38.  The use of a taser on a person who is physically infirm can elevate the risk of serious injury or death. *Id.*  If a person's system is already compromised by overexertion, stress, pre-existing medical or psychological conditions, the use of a taser may have the additive effect in contributing to cumulative exhaustion, stress, pre-existing medical or psychological conditions, and associated medical risks. *Id.*  Thus, from the language of Plaintiff's pleading, it certainly can be inferred that the tasering of Plaintiff caused Plaintiff's convulsions to continue, with each additional

7

administrations of the taser, thereby causing the vicious cycle of convulsions, tasering, and convulsions to continue.

## **STATEMENT OF RELATED CASES AND PROCEEDINGS**

There are no related cases or proceedings.

## SUMMARY OF ARGUMENT

Qualified immunity determinations require a two-stage analysis: (1) the court must "determine whether the facts, and inferences drawn therefrom, taken in the light most favorable to the plaintiff, establish that the official's conduct violated a constitutional right." *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)); and (2) the court must "determine whether, as a legal matter, the right that the defendant's conduct allegedly violates was a clearly established one, about which a reasonable person would have known." *Id.* (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)).

In reviewing the denial of Defendants' qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the Court must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff. *See Mayer v. Belichick,* 605 F.3d 223, 229–30 (3d Cir. 2010). Because the complaint requires only "a short plain statement of the claim showing that the pleader is entitled to relief" (F.R.C.P. 8(a)(2), plaintiffs have no compulsion to describe all the extant rules, regulations, protocols, training and training aids which informed a defendant that his conduct was unreasonable and Constitutionally prohibited. "This Court has cautioned 'that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record on the vast

10

majority of cases'." *Newland v. Reehorst*, 328 Fed. Appx. 788, 791 n.3 (3d Cir. 2009).

Accepting as true the facts set forth above in the case *sub judice*, the district court properly determined that a reasonable officer or EMS member under the circumstances would know that the use of physical force that included tasering a medical subject who had already been handcuffed, subdued, and retrained on an ambulance litter, and did not pose any threat, more than a dozen times, violated the Plaintiff's constitutional rights. As such, the motion to dismiss based upon a qualified immunity defense was properly denied. There is abundant caselaw to support the district court's determination, and Defendants have failed to meet their burden of establishing they are entitled to qualified immunity.

Defendants Seltzer, et al make a secondary argument that the district court misidentified the constitutional right at issue, has no basis and is refuted by the law as well as the allegations expressly identifying those rights in the Amended Complaint.[4]

---

[4] Defendant Alles does not join in this argument.

# **ARGUMENT**

1. <u>The Defendants Could Not Reasonably Believe That It Was Lawful To Tase A Handcuffed And Restrained Medical Patient, Not Suspected Of Any Criminal Activity, More Than A Dozen Times, Including While He Was Restrained On An Ambulance Litter</u>.

Importantly, this counter-issue is drawn from the facts pled by Plaintiff in his Amended Complaint. Defendants, on the other hand, have stated an interesting, but seriously misleading contention as their first issue. It is extremely important to note that the Amended Complaint states only that the Plaintiff was suffering a seizure immediately prior to and at the moment of EMTs Barzev and Brett's arrival, and that at that moment the EMTs were unable to administer medical attention due to Plaintiff's involuntary convulsions; and, that Plaintiff was then tased and handcuffed. App. 26, 21-22.

The Amended Complaint makes no mention that Plaintiff continued to experience seizures after that. And, there is no mention that the EMTs were unable to medically attend to Plaintiff after that. In fact, the Amended Complaint clearly states that they did. They strapped Plaintiff into a litter and transported him to the hospital.

Yet, despite these undisputed facts, Defendants argue that the 13 subsequent gratuitous taser strikes upon a handcuffed and fully restrained and controlled Plaintiff, were somehow not in knowing violation of Plaintiff's well established right to be free from the excessive use of force.

12

Defendants not only do not discuss these allegations in Plaintiff's pleading but, they disingenuously imply that these repeated taserings were necessary to allow the EMTs to provide medical care to the Plaintiff – facts supplied by Defendants out of thin air.

While Plaintiff disagrees that the first taser strike was warranted (or, did anything but improperly strike Plaintiff with high voltage at the precise time when his brain was reeling from a sudden surge of electrical activity), the Defendants' arguments that the <u>continued</u> tasering of Plaintiff thereafter served some higher medical purpose, cannot be based upon the allegations made in Plaintiff's Amended Complaint. There is no suggestion in the Amended Complaint that the administration of any treatment to Plaintiff was problematic after Plaintiff was handcuffed, unless one refers to the obvious obstruction to medical attention produced by the Defendants' 13 subsequent taser strikes.

In truth, what Defendants contend is that under <u>their</u> version of the facts, they would not have known that what they were doing violated Plaintiff's clearly established right to be free from excessive use of force. <u>Their</u> version of the facts, in a sentence, is that they properly used a taser to save the life of a combative and assaultive person. These "alternative facts" cannot be said to be derived, as required, from the taken-as-true allegations appearing in Plaintiff's Amended Complaint, nor from the favorable inferences which can be drawn therefrom.

In fact, the Defendants' framing of the issue is itself a statement of <u>contested</u> "fact". They state: "The Law Regarding The Use Of A Taser To Facilitate Medical Treatment Was Not Clearly Established." This presupposes that the Defendants utilized a taser to "facilitate Plaintiff's medical treatment" when the Plaintiff's Amended Complaint alleges exactly the contrary, asserting instead that the taser:

1) was applied as a "pain compliance 'technique [which is] known to cause extreme pain upon administration" (App. 28, ¶ 23);

2) was deployed "in excess of a dozen times" (*Id.*, ¶ 26);

3) was applied "after … Plaintiff was handcuffed" (*Id.*, ¶ 24), and after he was "under the absolute control of Defendants, Seltzer and Alles" (*Id.*, ¶ 25);

4) use "violat[ed] the protocol in place for EMS employees" [as it constituted the] … rendering of "non-treatment which risks the life of the patient" (App. 29, ¶ 28);

5) use in the case of a person like Plaintiff who was "suffering with a seizure" … "risked injury or death" and could have "induce[d] additional seizures, or worsen [Plaintiff's] existing seizures" (*Id.*, ¶ 29);

6) was used to "physically abuse[ ] Plaintiff by tasering Plaintiff 14 times over numerous parts of his body," "while handcuffed and in custody" (*Id.*, ¶ 33); and included Plaintiff's continuous tasering, "[e]ven after

14

the Plaintiff was loaded in the ambulance, strapped to the litter" (*Id.*, ¶ 30); and that,

7) "[t]he actions of Defendants, Richard Seltzer and Ryan Alles were outrageous, egregious, intentional, willful, wanton, reckless, and in deliberate disregard to Plaintiff's rights entitling Plaintiff to punitive damages in an amount to be determined." (App. 30, ¶ 42).

It is these and other similar allegations appearing in Plaintiff's Amended Complaint (which are taken as true, and construed in the light most favorable to Plaintiff, together with all favorable inferences to be drawn therefrom), and not Defendants' contrived facts, which were properly applied by the district court in arriving at its decision to deny the Defendants qualified immunity, and which are the subject of this Court's review. *Torisky, supra.*

When the application of the following pertinent law to Plaintiff's factual allegations is made, the conclusion that Defendants cannot be immunized for this conduct, is inescapable.

The individual Defendants assert that the district court erred in denying their motion to dismiss based upon qualified immunity.[5] "[Q]ualified immunity shields

---

[5] The lead sentence of the Defendants Seltzer et al's argument under the heading "III. Defendants/Appellants Did Not Violate Plaintiff/Appellee's Clearly Established Constitutional Rights", states: "As neither the Supreme Court nor this Court of Appeals has ever held that comments, insults, or unfulfilled threats could form the basis of a claim for First Amendment retaliation, Defendants/Appellants are entitled

government officials from civil liability as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The qualified immunity analysis has two parts: (1) the court must "determine whether the facts, and inferences drawn therefrom, taken in the light most favorable to the plaintiff, establish that the official's conduct violated a constitutional right." *McGreevy*, 413 F.3d at 364 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)); and (2) the court must "determine whether, as a legal matter, the right that the defendant's conduct allegedly violates was a clearly established one, about which a reasonable person would have known." *Id.* (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)). This step requires "that in light of preexisting law, the unlawfulness of the official's conduct was reasonably and objectively apparent." *McGreevy*, 413 F.3d at 366 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999).  It is the burden of a defendant official asserting qualified immunity to establish an entitlement to the same. *Beers–Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989)).

---

to qualified immunity as to all claims in the Amended Complaint."  Plaintiff will not respond to this irrelevant argument as it was clearly drawn from an unrelated prior brief of Defendants.

16

In its September 30, 2016 Memorandum denying qualified immunity, the district court, following an extensive recitation of the facts in the light most favorable to the Plaintiff, determined that:

> Considering only the facts alleged in the Amended Complaint, no officer could reasonably believe it was lawful to tase a handcuffed patient, who at some point during the tasing had been loaded into an ambulance and strapped down to the litter, more than a dozen times. Similarly, no emergency medical responder could reasonably believe it was lawful to direct police officers to tase a handcuffed patient over numerous parts of his body. Therefore, qualified immunity is denied without prejudice.

*See App. 14.*

It is this finding that Defendants challenge in this appeal.

Plaintiff has alleged a constitutional violation based upon the use of excessive force by the Defendant officers and EMS. When a qualified immunity defense is raised, the Court must determine whether Plaintiff's right was "clearly established" in some "particularized" sense. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful," *Id.* at 638. To the contrary, a precise factual correspondence between the right asserted and prior case law is not required. *Good v. Dauphin County Soc. Servs. for Children & Youth,* 891 F.2d 1087, 1092 (3d Cir. 1989). "There has never been ... a section 1983 case accusing welfare

17

officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [or criminal] liability." *United States v. Lanier*, 520 U.S. 259, 271 fn. 10 (1997) (internal citations omitted). "[I]f we were to require 'precise factual correspondence' between the case at issue and a previous case ... we would not be 'faithful to the purposes of immunity by permitting ... officials one liability-free violation of a constitutional or statutory requirement.'" *Assaf v. Fields*, 178 F.3d 170, 176 (3d Cir. 1999) citing *Burns v. County of Cambria, Pa.*, 971 F.2d 1015, 1024 (3d. Cir 1992) (quoting *People of Three Mile Island v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 144-45 (3d Cir. 1984)).

Whether an official may be protected by qualified immunity turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999). "The ultimate issue is whether ... reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." *Good*, 891 F.2d at 1092. Pre-existing district court opinions do play a role in the qualified immunity analysis. *Doe v. Delie*, 257 F.3d. 309 fn.10 (3d Cir. 2001) citing *Pro v. Donatucci,* 81 F.3d 1283 (3d Cir. 1996).

18

If a reasonable official would have known that the conduct was unlawful, qualified immunity is generally not available. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982). The absence of a judicial decision holding that it is unlawful to use a taser repeatedly and unnecessarily under similar circumstances does not prevent a court from denying a qualified immunity defense. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 251 (4th Cir. 1999). As the Supreme Court has emphasized, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002).

This Court has cautioned "that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record on the vast majority of cases." *Newland v. Reehorst*, 328 Fed. Appx. 788, 791 n.3 (3d Cir. 2009). "A decision on qualified immunity will be premature when there are unresolved disputes of historical facts relevant to the immunity analysis." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002).

The Amended Complaint in this case sets forth one of the most horrific and unjustified police uses of a taser in recent memory. The Defendants' attempt to immunize their conduct by claiming, in effect, that they didn't know it was wrong, rivals their physical conduct in its audacity.

Defendants' brief ignores those cases which the courts have concluded, warranted the denial of qualified immunity, including a case involving Defendant

19

City of Allentown, its police officers, and Defendant Seltzer, et al's present counsel, wherein the district court determined "a reasonable law enforcement officer should know that an excessive use of a taser stun to effectuate an arrest would constitute a Fourth Amendment violation." See *Geist v. Ammary*, 2012 WL 6762010, at *8 (E.D. Pa. 2012). Moreover, Defendants reference no caselaw involving taser use decided at the motion to dismiss stage. All cases to which Defendants refer were fully developed as a result of the discovery process, with a full record available for consideration.

All Defendants cite *Aldaba v. Pickens*, 844 F.3d 870 (10th Cir. 2016) in support of their claim. This case is readily distinguishable. First, *Aldaba* was decided at the summary judgment stage when the record was fully developed. Secondly, the established facts in that case are clearly distinguishable from the case here. In *Aldaba*, a hospital patient suffering from dehydration and pneumonia cut his IV and oxygen tubes and began yelling that he was Superman, God, and that the hospital was trying to poison and kill him. He began to exit the hospital and pulled gauze and tape from his arms causing a steady stream of blood to run out of each arm. When officers arrived, a medical doctor told the officers that if he left the hospital, he would die. To restrain the patient, the officers tased the patient apparently one time, and, perhaps a second time. After being restrained by the police, he was never tased again. The lack of value of this citation is obvious and,

20

is generally emblematic of the caselaw cited by Defendants. It provides no guidance to this Court.

It should also be noted that Defendant Alles spends a considerable amount of time citing cases where the courts did not disapprove of taser use where the individual was properly subjected to arrest and could only be brought into compliance with the deployment of a taser. *Alles Memorandum*, pages 18-23. The distinction here is obvious. Plaintiff had not committed any criminal offense. He was not subject to warrantless arrest. His actions, as the Amended Complaint makes clear, were involuntary – not non-compliant, and he became restrained and under control after the first taser. Even where Alles jointly places reliance upon *Aldaba*, the case presents no cover.

In the instant matter, Defendants appeal should be properly denied since the unrebuttable facts set forth in the Amended Complaint, establish a sufficient record to find that a reasonable officer would be aware that their conduct was a gross violation of constitutional rights and that they used excessive force against Plaintiff, a restrained medical patient.

The law in this Circuit regarding excessive force by law enforcement, and in other circuits, is well-established. While the concept of excessive force is not dependent upon the instrument used to inflict it, excessive force jurisprudence is well established and includes caselaw concerning the excessive use of a taser.

1) <u>It is well-settled that a person has the right to be free from the use of any force where no force is justified</u>.  See, *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001)("less than deadly force, like deadly force, may not be used without sufficient reason, rather, it is subject to the *Graham* balancing test.").

2) <u>The plaintiff's right to be free of the use of excessive force is well-established</u>. See, *Kopec v. Tate*, 361 F.3d 772, 776–78 (3d Cir. 2004)(every citizen has a Fourth Amendment right to be free from excessive force during lawful arrests. To avoid running afoul of the Fourth Amendment, an officer may exercise only an "objectively reasonable" degree of force in effectuating an arrest); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010)(force is reasonable only when exercised in proportion to the threat posed).

3) <u>The plaintiff's right to be free from excessive force in the form of a taser is well-established and such that a reasonable person would have known</u>.  See e.g., *Geist v. Ammary*, 2012 WL 6762010, at *8 (E.D. Pa. 2012), a case involving the use of a taser to effectuate an arrest that also involved the Defendant City of Allentown, City police officers, and the same defense counsel as in the case *sub judice*.  The Defendant officer raised the qualified immunity defense in a motion to dismiss.  The district court denied the motion holding that "a reasonable law enforcement officer should know than an

excessive use of a taser stun to effectuate an arrest would constitute a Fourth Amendment violation"; in accord, *Gorman v. Warwick Twp.*, 2011 WL 1235198, at *9 (E.D. Pa. 2011); *Brown v. Burghart*, 2012 WL 48784 (E.D. Pa. 2012)(the police do not need judges to explain the obvious to them before they can be held accountable for an unreasonable or excessive use of force); *Meirthew v. Amore*, 417 Fed. Appx. 494, 499 (6th Cir. 2011)(denying qualified immunity, stating it is unreasonable to use significant force on a restrained subject, even if some level of passive resistance is presented).

4) <u>Because taser usage is not determined to be excessive force, *per se*, a determination of whether taser usage constitutes excessive force is fact driven, and a defendant's subjective belief for the necessity of its use, is irrelevant and provides no immunity or defense.</u>  See,  *Scott v. United States*, 436 U.S. 128, 137–139 (1978)(the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation).

5) <u>Thus, if a taser is deployed in a circumstance where no force is appropriate, its mere use constitutes excessive force, and qualified immunity should be denied.</u>  See, *Casey v. City of Federal Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007)(an officer's violation of the *Graham* reasonableness test is a violation

of clearly established law if there are no substantial grounds for a reasonable officer to conclude that there was legitimate justification for acting as she did); see also *Austin v. Redford Tp. Police Dept.*, 690 F.3d 490, 498–99 (6th Cir. 2012)(it is well established that the use of a taser on a handcuffed suspect who no longer poses a safety threat, flight risk, and/or is not resisting arrest, constitutes excessive force); *Brown v. City of Golden Valley,* 574 F.3d 491, 499 (8th Cir. 2009)(it is clearly established that an individual is entitled to be free from excessive force in a taser use case).

6) Thus, if a taser is deployed more frequently than necessary, its use constitutes excessive force. See, *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) ("Quite simply, though the initial use of force (a single Taser shock) may have been justified, the repeated tasering … was grossly disproportionate to any threat posed and unreasonable under the circumstances … Where the force employed was so utterly disproportionate to the level of force reasonably necessary … any reasonable officer would have recognized that his actions were unlawful. "); *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (as the threat changes, so too should the degree of force); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010)(Force also becomes increasingly severe the more often it is used; striking a resisting suspect once

is not the same as striking him ten times. It's the totality of the circumstances, not the first forcible act, that determines objective reasonableness).

7) Thus, if a Taser is deployed against a person who is already restrained, its use constitutes excessive force. See, e.g. *Gorman v. Warwick Twp*., 2011 WL 1235198, at \*9 (E.D. Pa. 2011); See also, *Shultz v. Carlisle Police Dept*., 706 F.Supp.2d 613, 624 (M.D. Pa. 2010)(a reasonable officer would know that the use of physical force that included repeatedly tasering a subject who had already been subdued and did not pose any threat violated the plaintiff's rights. As such, the qualified immunity defense is unavailable); *Landis v. Baker*, 297 Fed. Appx. 453 (6th Cir. 2008) (holding that repeated use of taser against subdued defendant lying face-down in swamp water violated clearly established law, as of November 2004); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010)(once the subject was on the ground, unarmed, and apparently unable to stand up on his own, the risk calculus changed); *Woods v. Grant*, 665 F.2d 438 (D. Del. 2009)(the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional); *Abbott v. Sangamon County, Ill.***,** 705 F.3d 706 (7th Cir. 2013)(it was well established that a second tasering of suspect after she had fall

8) en to the ground and convulsed but made no movement after the first taser ended was excessive force); *Meyers v. Baltimore County, Md.*, 713 F.3d 723, 734 (4th Cir. February 1, 2013)(finding that where a subject was unarmed and effectively secured, a reasonable officer would have understood that his delivery of some, if not all, of the taser shocks violated the subject's Fourth Amendment right to be free from the use of excessive and unreasonable force).

9) <u>Thus, if a taser is deployed against a person who is already restrained and is a medical subject, its use constitutes excessive force.</u>  See, *Borton v. City of Dothan,* 734 F.Supp.2d 1237, 1252 (M.D. Ala. 2010)(three unprovoked tasings on a mentally disturbed patient, who is not under arrest and who has been secured face down on a gurney with handcuffs and Posey restraints, amount to excessive force in violation of the Fourth Amendment. "On these facts, no particularized preexisting case law is needed for it to be clearly established that the officer's tasing of the subject violated her Fourth Amendment right to be free from the use of excessive force. Thus, the officer had fair warning that his conduct violated the Constitution"); *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009)(tasering the plaintiff at least eight and as many as eleven or twelve times over a two-minute span without attempting to arrest or otherwise subdue the plaintiff—including tasering

plaintiff while he was writhing in pain on the hot pavement and after he had gone limp and immobilized—was so plainly unnecessary and disproportionate that no reasonable officer could have thought that this amount of force was legal under the circumstances. When measured against these facts, the officers violated a clearly established right).

Accordingly, if Plaintiff has alleged in his taken-as-true-Amended Complaint, that any ONE of the above occurred, Defendants' claim for qualified immunity must fail.

Even a cursory review of Plaintiff's Amended Complaint demonstrates that eight of the eight above well-established bases for asserting Defendants' unconstitutional use of force have been pled.  They appear as allegations in, *inter alia*, paragraphs 10, 28, 34, 35, 36, 37, 45, 46, 47, and 48 of the Amended Complaint. These same paragraphs also reiterate Plaintiff's claimed right to be free of the excessive use of Defendants' force.

Given the foregoing (and considering the proper and not skewed issue formulated by Defendants), it is abundantly clear that at this pleading stage, the Defendants' assertion that the conduct attributable to them was not reasonably known to constitute the excessive use of force, cannot withstand scrutiny.  And, to judicially immunize such conduct would be to announce 'open season' on the sick and helpless by police taserers everywhere.  Moreover, Defendants cannot obtain

immunization from what the Plaintiff alleges in his Amended Complaint is the excessive and wholly unwarranted use of a taser on a restrained, law-abiding citizen, by claiming, as a defense, that they believed it would inexplicably terminate the seizure he was experiencing.  This statement is not debatable since Defendants' alleged subjective beliefs: (1) are not facts pled in Plaintiff's Complaint; and (2) are, in any event, irrelevant in the Section 1983 excessive force context. See, *Scott v. United States*, 436 U.S. 128, 137–139 (1978)(the "reasonableness" inquiry is made without regard to an officer's underlying intent or motivation).

In short, it is only to the 'considered-as-true' facts found in Plaintiff's Amended Complaint that the well-established law protecting citizens from Defendants' outrageous conduct is applied … not Defendants' rewrite of those allegations.  The Defendants' claim that their actions were motivated solely by altruism, dehors the record and, is irrelevant in any event.  And, finally, even if all of the foregoing were not true, the Defendants' tasering of a helpless, handcuffed, seizure victim more than a dozen times as a "health measure", is a matter for a jury to decide[6] – in the same fashion that they would decide the issue of whether blasting a drowning victim 14 times with a fire hose, was done to save him.

---

[6] Even if this Court were to improvidently choose to view Defendants' creation of alternative facts as, "disputed facts", this issue would clearly be a jury question because, although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.  *See Johnson v. Jones*, 515 U.S. 304, 313, 115 S.Ct. 2151,

2. <u>The District Court Defined The Constitutional Right At Issue With The Appropriate Level Of Specificity.</u>

Defendants Seltzer, et al repeat their prior attempt to redraw the issue actually presented by once again trying to turn it into a referendum on the Defendants' alleged (irrelevant) underlying intent and/or motivation as a medically justifiable one. And even if the Defendants' intent and motivation were not categorically irrelevant[7], no reading of Plaintiff's Amended Complaint can be fairly read to say that the Plaintiff is alleging that Defendants' unconstitutional acts were "the use of a Taser in the facilitation of life-saving medical treatment"[8], as Defendants argue.

Defendants Seltzer, et al's secondary claim is that the district court misidentified the constitutional right which it focused upon in its qualified immunity analysis. A review of the Amended Complaint establishes that the Plaintiff alleged the precise excessive use of force that was inflicted upon him, and detailed the tasing, handcuffing, further tasing, and restraint on a litter, accompanied by the further continued tasing of Plaintiff. Defendants claim that the district court should have

---

132 L.Ed.2d 238 (1995) (qualified immunity may turn on disputed issues of fact); *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir. 1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination.") *Monterio v. City of Elizabeth*, 436 F.3d 397, 403 (2006). By making this observation however, Plaintiff does not agree that Defendants are free at this stage to substitute their unfavorable interpretation or "inferences" for the applicable legal standard of drawing all inferences in Plaintiff's favor.

[7] *Scott, supra.*

[8] Appellant's Primary Brief, p. 29.

29

focused upon their apparent defense in this case, to wit, that what would appear to a jury from all commonsense human experience to be a horrific attack upon Plaintiff was, in reality, a joint live-saving venture among the Defendants. Br. at 29. As stated above, the district court was correct in not accepting Defendants' thinly veiled attempt to rewrite Plaintiff's Amended Complaint. The Plaintiff's Amended Complaint did not claim that Defendants' intent was praiseworthy, but rather that there actions were "outrageous, egregious, intentional, willful, wanton, reckless, and in deliberate disregard of Plaintiff's rights …" (App. 30, ¶ 42). When taken as true, with all favorable inferences inuring to Plaintiff, Plaintiff's Complaint cannot be read as a chronicle depicting Defendants as angels of mercy hovering with care over an ill patient. It is the alleged serious and excessive use of force that is the constitutional issue which was properly addressed by the district court. There simply are no facts alleged in the Amended Complaint which support the Defendants' representation that the fourteen taser strikes were to control the medical condition of Plaintiff. Their attempt to find support for same in two cited paragraphs fails. As outlined above, paragraphs 22 and 34 of the Amended Complaint make no such statements. Paragraph 22 merely recites a *defacto*, self-justifying, entry by one Defendant in his police report, without adopting that statement as true. Paragraph 34 is merely a legal opinion by prior Plaintiff's counsel and is not a statement of an alleged established fact.

30

In accordance with long-standing legal precedent, the Defendants' attempt to misdirect the injury by injecting the Defendants' irrelevant, alleged underlying "intent or motivation", correctly did not benefit them before the district court, and should not be entertained here. The Defendants' "spin" aside, the notion that it is objectively reasonable for police to taser a handcuffed and litter-restrained medical patient over a dozen times to control his seizures, is pure folly. If this were so, we would see tasers as medical devices of choice in emergency rooms all across the country. Wisely, this is not the case.

## CONCLUSION

WHEREFORE, the Appellee respectfully requests this Honorable Court to deny Defendants' Appeal and remand this case back to the district court.

Respectfully submitted:

Dated: March 24, 2017

s/ Robert E. Goldman
Robert E. Goldman, Esquire
Pa. ID #25340
535 Hamilton Street, Suite 302
Allentown, PA 18101
(610) 841-3876
(215) 933-6902 fax
reg@bobgoldmanlaw.com
Counsel for Plaintiff/Appellee

## CERTIFICATION OF BAR MEMBERSHIP, WORD COUNT, SERVICE, IDENTICAL TEXT, AND VIRUS CHECK

I, Robert E. Goldman, Esquire, hereby certify that:

1) I am a member in good standing of the bar of this Court;

2) This Brief contains 6,466 words;

3) I did cause seven (7) copies of Plaintiff/Appellee's Reply Brief to be served on the Clerk of Courts of the Third Circuit Court of Appeals.

I further Certify that a true and correct copy of Plaintiff/Appellee's Reply Brief was served on the following individuals via U.S. First Class Mail:

Rufus A. Jennings, Esquire          Frank J. Lavery, Jr., Esquire
John P. Morgenstern, Esquire        Carl S. Sandel, Esquire
Deasey, Mahoney & Valentini, Ltd.   Joshua M. Autry, Esquire
1601 Market Street, Suite 3400      Lavery Law
Philadelphia, PA 19103              225 Market Street, Suite 304
                                    Harrisburg, PA 17108

4) The text of the electronic format of this Application is identical to the hard copy format; and

5) A virus check was performed on this Application, using Windows Defender, last updated March 24, 2017, and no virus was detected.

I make this combined certification under penalty of perjury, pursuant to 28 U.S.C. § 1746.


Dated:  March 24, 2017                    s/ Robert E. Goldman
                                          Robert E. Goldman, Esquire
                                          Attorney for Plaintiff/Appellee